Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **MUNICIPIO DE JUANA DIAZ**<br><br>Apelados<br><br>v.<br><br>**SUCESIÓN J. SERRALLES SECOND, INC. Y OTROS**<br><br>Apelantes | KLAN202401151 | ***APELACIÓN***<br>procedente del Tribunal de Primera Instancia Sala Superior de **Juana Díaz**<br><br>Caso Número:<br>**JD2023CV00237 (Salón 1 Sala Superior)**<br><br>Sobre:<br>**Sentencia Declaratoria** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Comparece ante nos, la Sucesión J. Serrallés Second, Inc., en adelante, SJSS o apelante, y D.I.S., Inc., en adelante, DIS o apelante, apelando la *"Sentencia Sumaria"* del Tribunal de Primera Instancia, Sala Superior de Ponce, en adelante, TPI-Ponce, del 25 de septiembre de 2024. En el referido dictamen, el Foro Primario determinó que la apelante es la titular del canal pluvial objeto de la controversia en el caso de autos.

Por los fundamentos que expondremos a continuación, *confirmamos* la sentencia apelada.

**I.**

Los hechos de este caso responden a una controversia de titularidad entre la SJSS y el Municipio de Juana Díaz, en adelante, Municipio o apelada. La SJSS es propietaria de una finca ubicada en el barrio Sabana Llana La Fe, desarrollada por DIS. Esta finca colinda con las urbanizaciones La Fe y Extensión La Fe.[1]

---

[1] Apéndice del recurso, pág. 222.

Número Identificador
SEN2025 _____

Alegan las apelantes que posterior a la construcción de estas dos urbanizaciones, DIS construyó un canal en la finca de la SJSS que descarga las aguas pluviales que se recogen de las alcantarillas de las urbanizaciones en cuestión. Debido a la vegetación y los escombros en el canal, el agua de lluvia no fluye adecuadamente hacia el cauce del río en el que se supone que descargue. Por esta razón, las urbanizaciones La Fe y Extensión La Fe se inundan cuando llueve significativamente.

Por estos hechos, el 9 de mayo de 2023, el Municipio presentó una *"Demanda"* ante el TPI-Ponce solicitando que este emitiera una sentencia declaratoria, que estableciera que el canal objeto de la controversia era propiedad de la SJSS, y no evadiera su responsabilidad de mantenerlo.[2] El 18 de agosto de 2023, los apelantes presentaron su *"Contestación a la Demanda"*.[3] En la misma, arguyen que el Municipio no obró de buena fe, por lo que solicitaron al Foro Primario que ordenara a la apelada a aceptar el dominio de la zanja pluvial, y atendiera el mantenimiento de esta. Además, plantearon que la controversia era académica, ya que el Municipio ejerció actos de dominio sobre el canal, reconociendo su titularidad y responsabilidad sobre esta.

Ese mismo día, el TPI-Ponce le concedió cinco (5) días a la apelada para replicar al planteamiento de academicidad.[4] Luego de una prórroga,[5] el Municipio radicó una *"Moción para cumplir Orden"* el 30 de agosto de 2023, en la que se opuso al planteamiento de academicidad de la apelante.[6] Finalmente, el 8 de septiembre de 2023, el TPI-Ponce declaró el aludido argumento *"No Ha Lugar"*.[7]

---

[2] Apéndice del recurso, pág. 4.
[3] *Id.*, pag. 39.
[4] *Id.*, pág. 48.
[5] *Id.*, pág. 51.
[6] *Id.*, pág. 52.
[7] *Id.*, pág. 64.

Sobre esto último, la SJSS y DIS solicitaron reconsideración,[8] la cual fue eventualmente declarada *"No Ha Lugar"* el 28 de noviembre de 2023.[9]

Posterior a estos hechos, el 28 de diciembre de 2023, las apelantes presentaron una *"Moción de Desestimación por Falta de Partes Indispensables"*.[10] En apretada síntesis, las apelantes argumentan que los residentes de las residencias ubicadas en las urbanizaciones La Fe y Extensión La Fe son partes indispensables, que estas no han sido traídas al pleito, por lo que procede la desestimación del mismo.

Previo a la réplica del Municipio a la precitada moción, Loyda Reyes Aguilera, residente de la urbanización Extensión La Fe radicó una *"Moción de Parte Interventora"*, por haber sufrido daños en las inundaciones del sector y ser parte indispensable del pleito de epígrafe.[11] Ahora bien, el 24 de enero de 2024, el Municipio presentó su *"Oposición a Moción de Desestimación"*.[12] Así, el 30 de enero de 2024, el Foro Apelado declaró *"No Ha Lugar"* la solicitud de intervención de Loyda Reyes Aguilera.[13] También, declaró *"No Ha Lugar"* la solicitud de desestimación por falta de parte indispensable.[14]

Así las cosas, el 21 de mayo de 2024, el Municipio presentó una *"Moción de Sentencia Sumaria"*.[15] En la misma, planteó veintiuno (21) hechos sobre los cuales no existe controversia.

---

[8] Apéndice del recurso, pág. 65.
[9] *Id.*, pág. 142.
[10] *Id.*, pág. 145.
[11] *Id.*, pág. 152.
[12] *Id.*, pág. 154.
[13] *Id.*, pág, 160.
[14] *Id.*, pág. 161.
[15] *Id.*, pág. 166. Para sustentar los hechos alegadamente incontrovertibles, el Municipio adjuntó como prueba documental la solicitud y contestación al pliego interrogatorio y requerimiento de documentos de la SJSS; la contestación al pliego interrogatorio y requerimiento de documentos de las apelantes; la Ordenanza Núm. 014 del Municipio de Juana Díaz; el plano de inscripción para los proyectos de las urbanizaciones en cuestión; carta de la SJSS al Municipio con fecha de 20 de junio de 2023; parte de la demanda y la contestación a la misma.

Además, expuso que el único asunto en controversia era la titularidad del canal de la aguas pluviales de las urbanizaciones La Fe y Extensión La Fe. Por su parte, el 12 de junio de 2024, la SJSS presentó su oposición a la solicitud de que se dicte sentencia sumariamente.[16] En su escrito, presentan una serie de hechos que alegan sí están en controversia, entre estos, la titularidad del canal pluvial y la responsabilidad de darle mantenimiento.

El 3 de julio de 2024, el Municipio replicó a la oposición de la SJSS a la solicitud de sentencia sumaria.[17] El 22 de julio de 2024, la SJSS duplicó a la referida réplica.[18] En la misma, reiteró que el canal objeto de la controversia es propiedad del Municipio, por lo que procede que el TPI-Ponce ordene a este aceptar mediante escritura pública su titularidad. Sin embargo, arguyó que en la alternativa, el Foro Apelado debía desestimar la *"Demanda"* del Municipio por este carecer de legitimación activa. El Foro Primario le concedió a la apelante un término de cinco (5) días para replicar al planteamiento de legitimación activa.[19] Luego de una prórroga,[20] el Municipio radicó una *"Moción para cumplir Orden"* el 4 de septiembre de 2024.[21]

---

[16] Apéndice del recurso, pág. 201. Para sustentar los hechos alegadamente incontrovertibles, la SJSS adjuntó como prueba documental los planos físicos de la propiedad perteneciente a la SJSS y el Municipio; carta del Alcalde Martínez Irizarry del Municipio de Juana Díaz a la Administración de Reglamentos y Permisos con fecha del 10 de diciembre de 1999; carta del Alcalde Martínez Irizarry del Municipio de Juana Díaz a la DIS con fecha del 24 de marzo de 2000; carta del Alcalde Martínez Irizarry del Municipio de Juana Díaz a la DIS con fecha del 11 de abril de 2000; carta del Alcalde Martínez Irizarry del Municipio de Juana Díaz a la Administración de Reglamentos y Permisos con fecha del 7 de junio de 2000; carta del Alcalde Martínez Irizarry del Municipio de Juana Díaz a la Administración de Reglamentos y Permisos con fecha del 2 de febrero de 2001; carta del Alcalde Martínez Irizarry del Municipio de Juana Díaz a ARPE con fecha del 2 de mayo de 2001; carta del Alcalde Martínez Irizarry del Municipio de Juana Díaz a ARPE con fecha del 8 de mayo de 2001; *"Resolución"* de la Junta de Planificación de Puerto Rico del 14 de septiembre de 1988; copia del documento para establecer la servidumbre de paso del sistema pluvial a favor de Municipio de Juana Díaz; carta del Municipio de Juana Díaz a la SJSS con fecha del 5 de noviembre de 2019.
[17] *Id.*, pág. 245.
[18] *Id.*, pág. 259.
[19] *Id.*, pág. 271.
[20] *Id.*, pág. 273.
[21] *Id.*, pág. 274.

Finalmente, el 25 de septiembre de 2024, el TPI-Ponce emitió una *"Sentencia Sumaria"*, en la cual determinó que el canal pluvial objeto de la controversia *le pertenece a la SJSS*, quien, además, está encargado de mantenerlo.[22] Para sustentar su determinación, el Foro Apelado estableció las siguientes determinaciones de hechos:

1. El Municipio es una entidad jurídica de gobierno local cuya finalidad es el bien común local, y que tiene capacidad jurídica para demandar y ser demandado. Su dirección es PO Box 1409, Juana Díaz, PR 00795 y su teléfono es 787-837-2185.[23]

2. El demandado SJSS es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con número de registro 96199. Su dirección física es Edif. Comercial Urb. Lago Horizonte, carr. PR-14 km. 11.0, Juana Díaz, PR 00795; su dirección postal es PO Box 801201, Ponce, PR 00780; y su teléfono es 787-260-2222.[24]

3. El demandado D.I.S es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con número de registro 52159. Su dirección física es Edif. Comercial Urb. Lago Horizonte, Carr. PR-14 km. 11.0, Juana Díaz, PR 00795; su dirección postal es PO Box 801201, Ponce, PR 00780; y su teléfono es 787-260-2222.[25]

4. SJSS y D.I.S. son corporaciones afiliadas que comparten direcciones, teléfono y accionistas.[26]

5. Desde abril de 2022, la Presidenta de ambas corporaciones es la Sra. Lyndda Torres Maldonado, quien además es Directora y Secretaria de ambas corporaciones.[27]

6. SJSS es la propietaria de una finca ubicada en el barrio Sabana Llana de Juana Díaz, cuyo número de catastro es 390-000-003-29 (en adelante, la Finca).[28]

7. Entre el 1983 y el 1988, D.I.S. construyó un canal en la Finca con el propósito de recoger las escorrentías pluviales de la comunidad La Plena.[29]

---

[22] Apéndice del recurso, pág. 297.
[23] *Id.*, págs. 1 y 39
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*, págs. 177 y 203.
[28] *Id.*, págs. 39 y 203.
[29] *Id.*, pág. 208.

8. Actualmente, la Finca colinda por su lado sur con las urbanizaciones La Fe y Extensión La Fe, las que fueron desarrolladas por D.I.S.[30]

9. En el canal que construyó D.I.S. en la Finca, actualmente descargan las aguas de lluvia que se recogen en las alcantarillas pluviales de las urbanizaciones La Fe y Extensión La Fe. El mencionado canal mide aproximadamente 2,000 pies de largo y contiene vegetación en su interior.[31]

10. Entre diciembre de 1999 y el 2005, las calles, encintados, aceras, alcantarillado pluvial y área recreativa de ambas urbanizaciones le fueron cedidas al Municipio por D.I.S., luego de que la Legislatura Municipal lo autorizara.[32]

11. El canal no fue parte de la cesión realizada entre D.I.S. y el Municipio, y el Municipio nunca ha otorgado una escritura en la que acepte la titularidad del canal.[33]

12. En varias ocasiones los demandados le solicitaron al Municipio que otorgaran la escritura de cesión del canal para que se convirtiera en su propietario, pero el Municipio siempre rechazó su pedido.[34]

13. Previo a la presentación de la demanda, el 28 de septiembre de 2022, el Municipio le requirió a SJSS que limpiaran el mencionado canal de manera que las aguas pluviales que el canal recibe sigan su curso hasta el Río Inabón sin obstrucción.[35]

14. En respuesta a lo requerido, el 17 de octubre de 2022, SJSS le notificó al Municipio que el canal no les pertenece, sino que le pertenece al Municipio.[36]

15. El 9 de mayo de 2023, el Municipio presentó la demanda de este caso, en la que solicita que el Tribunal resuelva que el canal le pertenece a SJSS, porque nunca ha otorgado una escritura en la que aceptara la titularidad del canal, y el plano de las mencionadas urbanizaciones aprobado por la Administración de Reglamentos y Permisos (en adelante, ARPe) tampoco incorpora el canal como parte del sistema pluvial de estas.[37]

16. En su contestación a demanda, SJSS y D.I.S. basaron su alegación de que el canal le pertenece al Municipio en que

---

[30] Apéndice del recurso, págs. 39 y 203.
[31] *Id.*, págs. 39-40.
[32] *Id.*, págs. 39, 190-191.
[33] *Id.*, págs. 179 y 203.
[34] *Id.*, págs. 179 y 209.
[35] *Id.*, pág. 41.
[36] *Id.*
[37] *Id.*, págs. 1 y 203.

ARPe así lo dispuso en su resolución aprobando el desarrollo y construcción de las urbanizaciones La Fe y Ext. La Fe, y en que el Municipio realizó unas mejoras en el canal sin contar con el permiso o autorización de SJSS y/o D.I.S.[38]

17. En el plano de alcantarillado pluvial ("storm sewer plan") de la Urb. Extensión La Fe, que fue aprobado por la ARPe en el caso 96-64-E-040- PPUR no aparece el canal como parte del sistema de alcantarillado pluvial de dicha urbanización.[39]

18. En el plano de alcantarillado pluvial tampoco aparece que exista una servidumbre que discurra por donde ubica actualmente el canal, a pesar de que el plano claramente establece donde ubican dichas servidumbres, las que denomina como "storm sewer right of way".[40]

19. De dicho plano surge claramente que la Urb. La Fe ya estaba construida al momento en que se preparó el plano.[41]

20. En el documento mediante el cual la ARPe aprobó la construcción de la Urb. Extensión La Fe, los únicos requisitos que la ARPe le impuso al Municipio fue que aceptara las calles y las facilidades vecinales (área recreativa).[42]

21. En el documento mediante el cual la ARPe aprobó la construcción de la Urb. Extensión La Fe, la ARPe no le ordenó al Municipio a que se convirtiera en el titular del canal objeto de este caso.[43]

22. SJSS y D.I.S. no tienen evidencia documental fehaciente que demuestre que la ARPe ordenó el traspaso del canal al Municipio.[44]

23. El 20 de junio de 2023, la Presidenta de SJSS y de D.I.S., Lyndda Torres Maldonado, por medio de una carta dirigida al Sr. Karl Vega García, director de obras públicas del Municipio, autorizó al Municipio a entrar al canal y a sus terrenos colindantes, los que les pertenecen a SJSS, a realizar los trabajos que entienda necesarios para limpiar la zanja y evitar inundaciones debido a que se acercaba el paso de la tormenta Bret.[45]

24. El Municipio y SJSS nunca han otorgado una escritura de cesión o de traspaso de titularidad mediante la cual el

---

[38] Apéndice del recurso, pág. 42.
[39] *Id.*, pág. 222.
[40] *Id.*
[41] *Id.*, pág. 203.
[42] *Id.*, pág. 195.
[43] *Id.*
[44] *Id.*, pág. 179.
[45] *Id.*, pág. 203.

Municipio haya adquirido la titularidad del canal de parte de SJSS.[46]

25. El Municipio y D.I.S. nunca han otorgado una escritura de cesión o de traspaso de titularidad mediante la cual el Municipio haya adquirido la titularidad del canal de parte de D.I.S.[47]

26. El Municipio le expresó claramente a SJSS y a D.I.S. que no aceptaría la titularidad del canal.[48]

Posteriormente, el 9 de octubre de 2024, la SJSS presentó una *"Solicitud de Determinaciones de Hechos Adicionales y Conclusiones de Derecho a Tenor con la Regla 43.1 de Procedimiento Civil y Moción de Reconsideración de Sentencia Sumaria"*.[49] El 1 de noviembre de 2024, el Municipio se opuso a la precitada moción de la apelante,[50] y ese mismo día, el TPI-Ponce declaró *"No Ha Lugar"* la solicitud en cuestión.[51]

Inconforme, la SJSS presentó un recurso apelativo ante esta Curia, el 26 de diciembre de 2024. En su petitorio, la apelante hace el siguiente señalamiento de error:

ERRÓ EL TPI AL RESOLVER QUE LA SECCIÓN 4 DE LA LEY NÚMERO 143 DE 20 DE JULIO DE 1979 Y EL REGLAMENTO 2734 DE LA JUNTA DE PLANIFICACIÓN SON PERTINENTES AL CASO CUANDO DE LOS TÉRMINOS DE DICHA LEY SURGE QUE EN ESTE CASO SOLO SON PERTINENTES PARA LA SOLUCIÓN DEL CASO LAS SECCIONES 1 Y 2 DE DICHA LEY Y LOS PRINCIPIOS GENERALES SOBRE SERVIDUMBRES PLUVIALES Y SERVIDUMBRES CONTINUAS Y APARENTES CONTENIDAS EN EL CÓDIGO CIVIL DE 1930.

Mediante *"Resolución"* del 9 de enero de 2025, le concedimos a la parte apelada hasta el 27 de enero de 2025 para presentar su posición. Luego de una prórroga concedida mediante *"Resolución"*

---

[46] Apéndice del recurso, pág. 187.
[47] *Id.*, págs. 187 y 203.
[48] *Id.*
[49] *Id.,* pág. 298.
[50] *Id.*, pág. 320.
[51] *Id.*, pág. 327.

del 3 de febrero de 2025, el Municipio presentó el *"Alegato del Apelado"* el 5 de febrero de 2025.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Apelación Civil**

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento, vista evidenciaria, sentencia, reconsideración, *apelación*, y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 52; *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho

estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones 4 LPRA Ap. XXII-B, R. 13(A); Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601,

610 (2023); *Acevedo y otros v. Dep*to. *Hacienda y otros*, 212 DPR 335, 350 (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *BPPR v. Zorrilla Posada y otro*, 2024 TSPR 62, 214 DPR ___ (2024); *Cruz, López v. Casa Bella y otros*, supra; *Oriental Bank v. Caballero García*, supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 979; *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Id.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa,

organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Id.* Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden

que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. *Id.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Id.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole,* supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* supra; *Acevedo y otros v. Depto. Hacienda y otros,* supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. Además, existen casos que no se deben

resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Id.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra, pág. 472.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.
>
> *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *BPPR v. Zorrilla Posada y otro,* supra; *Cruz, López v. Casa Bella y otros*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por

las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.

### C. Ley de Servidumbres Legales de Servicio Público

A grandes rasgo, las servidumbres son gravámenes impuestos sobre bienes inmuebles en beneficio de otro bien, perteneciente a un dueño distinto. Artículo 465 del Código Civil de 1930, en adelante Código Civil 1930, 31 LPRA ant. sec. 1631.[52] Nuestro ordenamiento jurídico reconoce una pluralidad de servidumbres, que gozan de naturalezas distintas y son constituidas de diversas formas. Así, pues, "el derecho de servidumbre se puede definir como un derecho subjetivo, de carácter real y perpetuo, que concede un poder para obtener un goce o utilidad de un fundo en beneficio de otro fundo ajeno". *Ciudad Real v. Mun. Vega Baja*, 161 DPR 160, 171 (2014).

Ahora bien, las servidumbres pueden ser legales, es decir, constituirse por virtud de Ley. Artículo 472, Código Civil 1930, supra, ant. sec. 1638. Éstas se refieren a aquellas "cuyo título de constitución es la ley y, por lo tanto, el dueño del predio destinado a sufrirlas no puede impedir su nacimiento". *Ciudad Real v. Mun. Vega Baja*, supra, pág. 172. En lo concerniente al caso del epígrafe, las servidumbres establecidas para utilidad pública se rigen por las leyes y reglamentos especiales que las determinan y, en defecto de éstas, por las disposiciones del ordenamiento civil de manera supletoria. Artículo 486 del Código Civil 1930, supra, ant. sec. 1702.

---

[52] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020. Sin embargo, los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia del citado estatuto, por lo que haremos referencia y esbozaremos el derecho a la luz del derogado Código.

Para ello, el legislador aprobó la Ley Núm. 143 de 20 de julio de 1979, Ley de Servidumbres Legales de Servicio Público, en adelante, Ley Núm. 143, 27 LPRA sec. 2151 *et seq.* Este cuerpo normativo fue creado con la intención de establecer que ciertas servidumbres, entre ellas la instalaciones de acueductos y alcantarillados pluviales y sanitarios, "tienen carácter de servidumbres legales, continuas y aparentes". Exposición de Motivos, Ley Núm. 143, supra. Por ser importante a la aplicación del derecho al caso de marras, destacamos de manera específica lo expuesto en las Secciones 2 y 4 de la precitada Ley. Veamos.

Las servidumbres pluviales, con carácter legal, pueden ser adquiridas por cualquier medio legal de adquisición, "en virtud de documento privado o escritura pública, o por prescripción adquisitiva de veinte (20) años o por expropiación forzosa". Artículo 2, Ley Núm. 143, supra, sec. 2152. La mencionada sección dispone, además, que a estas servidumbres le será aplicable la normativa general de servidumbres continuas y aparentes del Código Civil 1930, supra.

Por otro lado, la Ley Núm. 143 reconoce qué otros tipos de servidumbres legales pueden ser inscritas en el Registro de la Propiedad, sin la necesidad de constituirlas en un documento público o privado "en los casos de proyectos de construcción de edificios, de ***urbanizaciones***, de lotificaciones simples o cualesquiera otros proyectos de construcción e instalación de facilidades para servicios públicos en que por la finca principal o los solares discurran o se requiera instalar dichos servicios". Artículo 4, Ley Núm. 143, supra, sec. 2154.

Además, la Ley en cuestión ordena que las entidades públicas por las cuales se establecen las servidumbres legales tienen la responsabilidad de promulgar "los reglamentos que regirán el uso y disfrute de dichas servidumbres ***de conformidad con las***

***necesidades particulares de cada servicio***". Artículo 3, Ley Núm. 143, supra, sec. 2153.

A estos fines, se creó el Reglamento sobre Servidumbres de Paso de Alcantarillado y Desagüe Pluvial, Reglamento 2734, 23 RPR ant. sec. 650.4021 *et seq.*[53] En su introducción, el referido reglamento dispone que los sistemas de alcantarillados y desagüe son de gran importancia para la salud pública, entre otros. Por eso, expone que para que estos sistemas puedan ser usados de manera eficiente, es necesario establecer servidumbres legales. Por ello, el Reglamento 2734 amplía que la Ley Núm. 143, supra, el cuerpo estatutario que lo habilita, tiene el fin de establecer un sistema sencillo en el que los municipios puedan adquirir la titularidad de estas servidumbres, de manera que puedan accesar, mantener y operar los mismos.

La Sección 1.003 del Reglamento 2734, supra, ant. sec. 650.4023 establece que las disposiciones del reglamento en cuestión aplican a:

1- Todo proyecto de desarrollo o urbanización de terrenos de construcción de edificios, de lotificación simple en que por la finca principal o los solares discurran o se requiera instalar los servicios de desagüe y de alcantarillado pluvial que apruebe la Administración de Reglamento y Permisos.
2- Toda obra pública de construcción, alteración, demolición o mejoras a sistemas de desagüe y alcantarillado pluvial.
3- Toda personal natural o jurídica, pública o privada y cualquier agrupación de éstas.

Además, relevante al caso de marras, la Sección 4.02 del Reglamento 2734, supra, ant. sec. 650.4056 configura el *"Derecho de Mantenimiento"*, y circunscribe el mismo sobre los Municipios que disfrutan de servidumbres legales debidamente constituidas.

---

[53] El Reglamento 2734 quedó derogado, y en su lugar, ahora rige esta materia el Reglamento de Planificación Núm. 3, el cual entró en vigor el 30 de junio de 2005. Los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia del citado reglamento, por lo que haremos referencia a este.

En el caso de *Ciudad Real v. Mun. Vega Baja,* supra, nuestro Máximo Foro facilitó el análisis de la Ley Núm. 143, supra, y el Reglamento 2734, supra, compilando los requisitos a cumplirse para que un Municipio advenga titular de una servidumbre legal, específicamente, pluvial, en tres criterios:

1- Que el plano pluvial contenga la servidumbre bosquejada y esté aprobado por la agencia correspondiente.

2- El municipio tiene que haber endosado y aprobado la servidumbre.

3- El municipio tiene que haber otorgado un documento público o privado mediante el cual haya aceptado la servidumbre.

**III.**

Las apelantes recurren a esta Curia impugnando la *"Sentencia Sumaria"* dictada por el TPI-Ponce, mediante la cual determinó que el canal que recoge las aguas pluviales de las urbanizaciones La Fe y Extensión La Fe son propiedad y responsabilidad de la SJSS. Alegan que el Foro Primario incurrió en error, mediante su interpretación del derecho aplicable, en específico, la Ley Núm. 143. *No le asiste razón.*

Cuando un recurso apelativo impugna una sentencia sumaria, nos corresponde realizar una revisión de novo sobre la misma y la solicitud que la motiva. El estándar revisorio de estos recursos nos obliga a evaluar detenidamente el expediente. Así, hemos podido constatar que las determinaciones de hechos y derecho realizadas por el TPI-Ponce en su "*Sentencia Sumaria*" se sustentan con los documentos presentados por estas. Sin embargo, por no haberse presentado como controversia la veracidad de las determinaciones de hecho constatadas por el Foro Apelado en su dictamen, nos limitamos a atender el error en derecho que se nos presenta.

Nos queda claro que la polémica, en términos generales, se limita a determinar cuál de las partes es titular del canal. Ahora bien, la controversia que en este recurso acogemos y atendemos versa sobre la interpretación de las partes del carácter legal de la servidumbre pluvial de este caso.

La SJSS arguye que no es titular ni responsable del canal pluvial objeto de la controversia, por razón de que el Artículo 4 de la Ley Núm. 143, supra, dispone que el estatuto les aplica a los municipios, cuyas servidumbres discurren por los solares o propiedades que se benefician. Arguyen que, en este caso, el canal pluvial discurre por las afueras de las urbanizaciones que se benefician – La Fe y Extensión La Fe. Por esto, entiende la apelante, que a la servidumbre en cuestión le aplica únicamente las disposiciones generales del Código Civil de 1930, supra.

Por su parte, la posición del Municipio es que la Ley Núm. 143, supra, y el Reglamento 2734 que en virtud de esta se creó, aplican a todo tipo de servidumbre pluvial, independientemente si esta discurre por la propiedad o finca que se beneficia de esta, o a sus afueras.

Luego de evaluar los planteamientos de ambas partes, y estudiar el derecho estatutario y jurisprudencial que aplica, colegimos que en el caso de marras, aplica la Ley Núm. 143, supra. Entendemos que cualquier problema de interpretación que surja con relación a la titularidad de un Municipio con respecto a una servidumbre pluvial, quedó atendido y aclarado mediante el caso de *Ciuidad Real v. Mún. Vega Baja,* supra. Nuestro Máximo Foro, en el ejercicio de interpretación estatutaria que le corresponde, evaluó tanto la Ley Núm. 143, supra y el Reglamento 2734. De esta manera, delimitó a tres (3) requisitos los criterios para que un Municipio pueda adquirir la titularidad y responsabilidad de una servidumbre pluvial.

Hemos evaluado los documentos que apreció el Foro Apelado, incluyendo los planos de la finca propiedad de la SJSS y los de las urbanizaciones La Fe y Extensión La Fe, además de las comunicaciones y expresiones del Municipio con relación a la servidumbre pluvial. Por ello, estamos persuadidos a concluir lo mismo. En este caso, no se ha materializado ninguno de los requisitos dispuestos por *Ciudad Real v. Mun. Vega Alta*, supra, para determinar que el apelado es el titular responsable de mantener la servidumbre pluvial en cuestión.

Los planos endosados y aprobados por ARPe, ahora conocida como la Oficina de Gerencia de Permisos, no contiene el canal pluvial del cual se sirven las urbanizaciones La Fe y Extensión La Fe.[54] Por no constar estos en el plano, el Municipio nunca pudo dar su endoso. Además, si bien es cierto que algunas comunicaciones oficiales de hace más de dos (2) décadas, el Municipio se mostró interesado en adquirir las escrituras necesarias para la titularidad del canal, nunca admitió ser propietaria de estas.[55] De hecho, esas solicitudes son testimonio de ello.

Por último, atendemos brevemente el argumento de la SJSS con relación a los actos propios del Municipio. Estos alegan que las acciones de la apelada, como darle mantenimiento a la zanja pluvial de las urbanizaciones La Fe y Extensión la Fe constatan que estos se reconocen, de facto, ser los titulares de la misma.[56] Sin embargo, surge de la documentación que obra en autos que para ello, el Municipio recibió autorización expresa, oficial y escrita de la SJSS para entrar a su propiedad y atender el canal.[57] Por eso, argüir, como intentan ahora las apelantes, que el Municipio se ha servido y actuado como si la misma hubiese sido su propiedad, resulta

---

[54] Apéndice del recurso, pág. 222.
[55] *Id.*, págs. 228-230.
[56] *Id.*, págs. 73-120.
[57] *Id.*, pág. 196.

incorrecto. Además, la apelada es responsable por la salud y seguridad física del Municipio de Juana Díaz. Caracterizar las labores que realizó posterior a las inundaciones de las urbanizaciones La Fe y Extensión La Fe como una aceptación tácita de su titularidad, y no como el ejercicio de obrar a favor de los residentes por los cuales responde, de igual manera, es erróneo.

**IV.**

Por los fundamentos que esbozamos, *confirmamos la "Sentencia Sumaria" apelada.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones